IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| BRIAN K.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>    Defendant. | Case No. 1:23-cv-01159-MMM-JEH |

**Report and Recommendation**

Now before the Court is the Plaintiff's Brief (Doc. 10), the Defendant's Brief (Doc. 16), and the Plaintiff's Reply Brief (Doc. 17). This matter has been referred for a report and recommendation. For the reasons stated herein, the Court recommends the Plaintiff's request to reverse and remand the unfavorable decision of the Defendant, Martin O'Malley, Commissioner of Social Security, be granted.[1]

**I**

Brian K. filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on January 28, 2021, alleging disability beginning on November 1, 2020. He claimed he stopped working as a result of spine deterioration, a hernia, arthritis in his left hand, and borderline high blood pressure. AR 227. Medical records also indicated he underwent surgery following an injury to his right hand in early 2021. AR 329-30. In his June 2021 Function Report, Brian indicated he had difficulty with gripping items, lifting, standing,

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 7) on the docket.

bending, reaching, kneeling, and climbing stairs. AR 246, 250. Brian's DIB and SSI claims were denied initially on September 15, 2021, and upon reconsideration on February 23, 2022.

After a request for hearing before an administrative law judge, a hearing was held on October 3, 2022, before the Honorable John M. Wood (ALJ). At the hearing, Brian was represented by an attorney, and Brian and a vocational expert (VE) testified. Brian testified that he could no longer do his previous work as a truck driver due to worsening back pain. AR 33-34. As for his previous work as the owner of a motorcycle repair shop for about ten years, Brian testified he had done the hands-on portion of that work while his wife had done the paperwork. AR 34-35. He said, "I was getting to the point to where the lifting and the constant – you know, I really had to go then." AR 35. He explained that over time, his hernia, along with his joints and back, worsened to the point he could not do his previous work or any work. AR 35-36.

Following the hearing, Brian's claims were denied on October 13, 2022. His request for review by the Appeals Council was denied on February 15, 2023, making the ALJ's Decision the final decision of the Commissioner. Brian timely filed the instant civil action seeking review of the ALJ's Decision on April 20, 2023.

II

Brian challenges the ALJ's Decision for the following reasons: 1) the ALJ erred by failing to identify which transferable skills Brian allegedly acquired from his past work, ignoring evidence undermining the transferability determination and relying on unsupported VE testimony; 2) the ALJ did not explain how he concluded that the medium residual functional capacity (RFC) and restriction to frequent manipulation with the right hand adequately account for Brian's limitations due to back pain, a longstanding hernia, and right hand issues; and 3) the ALJ's subjective symptom analysis was patently wrong given its internal

2

inconsistencies and the ALJ's failure to consider reasons for the absence of additional treatment.

### III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566; 20 C.F.R. § 416.966.[2] The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous

---

[2] The standards for establishing a disability in order to receive DIB and SSI are materially the same. *Compare* 20 C.F.R. § 404.1501 *et seq.* (DIB) *with* 20 C.F.R. § 416.901 *et seq.* (SSI). Thus, the Court may at times only cite to the DIB regulations.

3

period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id*. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Brian claims error on the ALJ's part at Steps Four and Five.

### A

The ALJ first determined that Brian met the insured status requirements of the Social Security Act through December 31, 2024. AR 13. At Step One, the ALJ determined Brian had not engaged in substantial gainful activity since November 1, 2020, the alleged onset date. *Id*. At Step Two, the ALJ determined Brian had the following severe impairments: osteoarthritis; degenerative disc disease; status post fracture of the right hand; and a hernia. *Id*. At Step Three, the ALJ determined Brian did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 14. At Step Four, the ALJ made the following RFC finding:

> [T]he claimant has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he cannot reach overhead with his left (non-dominant) upper extremity and can frequently handle, finger, and feel with his right (dominant) upper extremity.

*Id*. The ALJ found Brian had acquired work skills from his past relevant work as a repair supervisor. AR 16. At Step Five, the ALJ determined that considering Brian's age, education, work experience, and RFC, Brian had acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. AR 16-17. The ALJ further found that considering Brian's age, education, work experience, and RFC, there are also jobs that exist in significant numbers in the national economy that Brian could perform, specifically the job of assembler. AR 17. Therefore, the ALJ concluded Brian had not been under a disability from November 1, 2020 through the date of the Decision, October 13, 2022. AR 18.

### B

In his Decision, the ALJ determined that Brian had acquired work skills from his past relevant work as a repair supervisor, which was skilled work, based

upon: the VE's testimony that Brian performed that work for a sufficient amount of time so as to acquire all of the skills necessary to perform the job independently of the other work performed in his composite job; and "[a]ccording to [Brian's] reports of how he actually performed this part of his composite job, he completed reports, managed staff, supervised other people's work, and hired and fired employees." AR 16. Brian argues the ALJ failed to identify which transferable skills Brian allegedly acquired, ignored evidence undermining the transferability determination, and relied on unsupported VE testimony. The Commissioner argues Brian's skills were "seamlessly transferable" because the light job of which he was capable – repair supervisor – was a component of his previous composite job of repair supervisor and motorcycle repair person. Dft Brief (Doc. 16 at pg. 11). The Commissioner further argues the ALJ properly relied on Brian's own statements, along with the VE's testimony, and found that Brian's skills would transfer to the light repair supervisor job.

SSR 82-41 provides, "Transferability of skills is an issue only when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations but does prevent the performance of past relevant work (PRW), and that work has been determined to be skilled or semiskilled." 1982 WL 31389, at *1. Here, the ALJ correctly addressed the question of transferability as he found Brian had severe impairments, Brian's severe impairments did not meet or equal the severity of one of the listed impairments, and Brian's PRW was skilled. From there, the ALJ's Decision faltered.

SSR 82-41 also provides, "When the issue of skills and their transferability must be decided, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation." 1982 WL 31389, at *7. Further, "[w]hen a finding is

6

made that a claimant has transferable skills, *the acquired work skills must be identified . . . .*" *Id*. (emphasis added). Here, the ALJ summarily listed what Brian reported as to how he actually performed that PRW, but the ALJ did not explicitly identify *which* transferable skills he acquired. *See* AR 16 ("The claimant has acquired work skills from past relevant work"); *and* AR 16-17 ("the claimant has acquired work skills from past relevant work that are transferable to other occupations . . . ."). The VE also did not identify the transferable skills Brian acquired, instead just testifying that Brian performed his PRW long enough to have the skills to do the job independently and answering, "Yes, Judge," to the ALJ's question of whether "considering the vocational factors, then there would be transferable skills to that particular position?" AR 42. In any event, "The transferability of skills is a determination entrusted to the ALJ, not the VE . . . ." *Abbott v. Astrue*, 391 F. App'x 554, 558 (7th Cir. 2010) (unpublished opinion).

Even if the Court were to read that portion of the ALJ's Decision in which he listed the self-reported tasks of Brian's PRW as the identification of acquired work skills, the ALJ did not address contrary evidence. *See Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling"). The ALJ cited Brian's Work History Report in the Decision. AR 16. In that Report, Brian described his motorcycle repair shop owner job (his PRW) to include selling parts and repairing motorcycles, ATVs, "some" jet skis, and boats. AR 237. He also checked "Yes" in response to the questions of whether he used machines, tools, or equipment; used technical knowledge or skills; and did "any writing, complete reports, or perform duties like this[.]" Id. At the hearing, Brian testified regarding the approximate ten years he worked as a motorcycle repair shop owner. He said he did "motorcycle, ATV parts, service, and repair" and was "hands-on with all of it." AR 34-35. He elaborated: "My *wife*

7

did the paperwork, and I was just getting to the point – there were two things . . . And then of course the other thing was the vendors. It was either start, you know, keeping a bunch of employees, or – I didn't want that stress at that point in my life." AR 35 (emphasis added).

There was sparse evidence in the record as to how Brian actually performed his PRW (per his own representations), but what was there included a discrepancy. This conflict in the record evidence was for the ALJ to address in the first instance. *Compare Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (stating a reviewing court may not reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute its judgment for that of the Commissioner). This legal error undermines the ALJ's Step Five findings where neither the ALJ nor the VE addressed the discrepancy. *See, e.g., Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018) (explaining an ALJ may not select and discuss only the evidence that favors his ultimate conclusion).

C

The Commissioner argues that even if Brian did not have any transferable skills at all, the ALJ also found Brian was capable of performing other, unskilled work in the national economy. In other words, per the Commissioner, the ALJ nevertheless satisfied the Commissioner's Step Five burden. In his Decision, the ALJ explained that he asked the VE whether jobs existed in the national economy for an individual with Brian's age, education, work experience, and RFC. AR 18. The VE responded that the individual would be able to perform the requirements of representative occupations at the medium, unskilled level such as an assembler, with 191,000 available jobs in the national economy. *Id.*; AR 41. In his opening and Reply briefs, Brian argues, pertinent to the Commissioner's retort, that the ALJ did not explain how the evidence the ALJ cited showed Brian was capable of the assessed medium RFC and that the ALJ's subjective symptom analysis was

patently wrong. While Brian makes a handful of discrete arguments as to the ALJ's narrative discussion of Brian's RFC (specifically, the alleged lack thereof) and the ALJ's subjective symptom evaluation, one argument in particular stands out.

Brian points out that the ALJ relied on the absence of additional evidence of treatment in the record. Indeed, the ALJ observed in his Decision that, "There is a limited amount of evidence in the record to support the claimant's allegations of impairment and no evidence that dates back to the alleged onset date." AR 15. In his brief, the Commissioner underscores the fact (four separate times) that there were just 14 pages of medical records Brian provided and which the ALJ analyzed. But, Brian contends, the ALJ did not sufficiently consider his treatment history in assessing his symptoms.

20 C.F.R. § 404.1529 provides, in relevant part, that an ALJ will determine "the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence" in order to decide how the claimant's symptoms affect his work ability. 20 C.F.R. § 404.1529(a). SSR 16-3p provides that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms as well as the factors set forth in 20 C.F.R. § 404.1529(c)(3) and 20 C.F.R. § 416.929(c)(3). SSR 16-3p, at *7-8. As for treatment sought or received, SSR 16-3p states that, "We will not find an individual's symptoms inconsistent with the evidence in the record on [the basis of the frequency or extent of treatment sought] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, at *9. The Seventh Circuit has explained, "Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's

9

reasons for the lack of medical care before drawing a negative inference." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012).

Here, Brian points to his testimony that he was in jail for a portion of the relevant period and could not afford health insurance or hernia surgery despite the pain and limitations his hernia caused. AR 30-31; AR 35-36. The Commissioner asserts: Brian was incarcerated for only a month and a half during the two-year period at issue, leaving him approximately 22 other months to seek out medical care after his pain allegedly became disabling; Brian testified his business insurance tripled because of Obamacare and he could not afford insurance anymore, however, he owned his business from 2001 to 2012, well prior to the period at issue that began in 2020; Brian did not allege a lack of insurance coverage while employed in other occupations from 2012 to 2020; and Brian testified that he had managed his hernia all his life, which would include the time during which he had insurance coverage through his business. The problem is that the foregoing was not articulated where it otherwise would have counted. The ALJ elicited an explanation at the hearing for why Brian never received surgery or treatment for his hernia, but, significantly, the ALJ made no mention of that testimony or any reasons for why he discounted that testimony *in the Decision*. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)); *see also* Plf Reply (Doc. 17 at pgs. 12-13) ("the fact remains that the ALJ failed to address *either* Plaintiff's incarceration *or* his insurance and financial issues as potential barriers to treatment") (emphasis in original). Moreover, Brian replies his hearing testimony showed a worsening of his physical condition and financial struggles in recent

years which undermines the Commissioner's reliance on his ability to work and seek treatment prior to that time.

To the extent the ALJ relied upon a dearth of record evidence, his failure to consider Brian's testified to explanation at least suggesting *a* reason for that amounts to legal error. This is particularly so where the ALJ relied upon the "limited amount of evidence in the record" to support Brian's subjective statements of his symptoms. *See Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) ("An ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence").

The Court recommends this matter be remanded for the ALJ to explicitly identify the transferable skills Brian acquired in his PRW and for the ALJ to consider all the relevant record evidence with a sufficient narrative discussion to ensure that a reviewing court can "assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (internal quotation omitted).

## IV

For the reasons set forth above, it is recommended that: 1) the Plaintiff's request to remand the unfavorable decision of the Defendant be granted; 2) the Commissioner's decision denying the Plaintiff's applications for disability insurance benefits and supplemental security income be reversed; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion pursuant to 42 U.S.C. § 405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal.

*Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on May 16, 2024.

<u>s/Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE